UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>       Plaintiff,<br><br>  v.<br><br>BERNARD L. COMPTON,<br><br>       Defendant. | Case No.   22-cv-10791<br><br>HON. |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC"), for its Complaint against Defendant Bernard Compton, alleges as follows:

## SUMMARY OF THE ACTION

1. This case involves multiple acts of insider trading conducted by Bernard L. Compton, a "Program Leader" formerly employed at Domino's Pizza, Inc. ("Domino's" or the "Company"). Compton misused confidential, material, non-public financial information, entrusted with him by Domino's, for his personal gain. Based on confidential financial reports he prepared for Domino's senior management, Compton purchased Domino's securities – usually out-of-the-money options – before the company disclosed its earnings results to the public. Compton

1

then sold the securities for a profit after the earnings announcements.  In total, Compton made $960,697.00 from his illicit trades.

2. Through his actions, Compton violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j (b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and, unless restrained and enjoined, will continue to violate the federal securities laws.

## JURISDICTION AND VENUE

3. The SEC brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. § 78u(d), 78u(e), and 78u-1].

4. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e), 78u-1, and §78aa].

5. Compton, directly or indirectly, made use of the means or instrumentality of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged herein.

6. Venue is proper in this District pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].  Certain of the acts, practices, courses of business, and transactions constituting the violations alleged herein occurred within the Eastern District of Michigan, including Compton accessing material

non-public information belonging to his employer and placing trades in his brokerage account.

## DEFENDANT

7. **Bernard L. Compton** ("Compton") is 56 years old and resides in Ypsilanti, Michigan. Compton held various accounting related roles at Domino's from 2005 to 2021 and held the position of Program Leader in Domino's Finance Department from at least 2015 to 2021. Compton was responsible for preparing financial reports of Domino's revenues, profits, and earnings-per-share for use by Domino's senior management. Compton was separated from Domino's in January of 2021.

## OTHER RELEVANT ENTITY

8. **Domino's Pizza, Inc.** ("Domino's" or the "Company") was at all relevant times, and currently is, a publicly-traded company incorporated in Delaware and headquartered in Ann Arbor, Michigan. At all relevant times, Domino's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and was quoted on the New York Stock Exchange under the ticker symbol "DPZ."

## FACTS

A. **Compton Accessed the Company's Confidential Earnings Information.**

9. From at least April 2015 through July 2020, Compton accessed and reviewed confidential data related to the financial performance of Domino's as part of his work as Program Leader.

10. Compton used that confidential data to prepare financial reports summarizing Domino's financial performance to date for that reporting period, which included Domino's revenues, profits, and earnings-per-share with comparisons of actual results to internal and external forecasts. These confidential reports were prepared by Compton for use by Domino's senior management.

11. All of the above financial information provided to Compton prior to release to the public constituted material non-public information, and Domino's considered the information confidential, material, and non-public and treated it accordingly.

B. **Compton Was Obligated to Maintain Confidentiality and to Refrain from Trading Domino's Securities Based on Inside Information.**

12. Domino's maintained a Code of Ethics, which directed employees to "maintain the confidentiality of information entrusted to them by the Company" and prohibited "employees from trading . . . in securities on the basis of material non-public information."

13. Domino's also maintained an Insider Trading Policy, which informed employees that "Federal and state securities laws prohibit the purchase or sale of a company's securities by persons who are aware of material information about that company that is not generally known or available to the public" and directed employees such as Compton that they "may not trade in the securities of the Company . . . if [they] are aware of material nonpublic information relating to the Company."

14. Both the Code of Ethics and the Insider Trading Policy applied to Compton.

### C. Compton Traded Ahead of Domino's Earnings Announcements.

15. Compton repeatedly purchased Domino's stock options while in possession of material non-public information regarding Domino's financial performance. Compton made these purchases of Domino's stock options prior to the public release of that same information in Domino's quarterly Earnings Announcements. Compton sold these options following Domino's Earnings Announcements after the previously non-public financial performance data was made public and impacted Domino's stock price.

16. A "stock option" or "option" is a financial contract between two parties in which the buyer purchases the right, but not the obligation, to buy or sell shares of an underlying stock at a predetermined price from or to the seller within a

specified time period. Each stock option confers the right to buy or sell 100 shares of stock. Therefore, purchasing an option can cost far less than purchasing the underlying stock and the purchaser of an option is able to obtain access to a larger position in the company than if the purchaser bought the underlying stock.

17. Call options are the right to purchase the underlying stock at a predetermined price within a specified period of time while put options are the right to sell the underlying stock at a predetermined price within a specified period of time. Generally, a trader purchases call options when they expect the price of the underlying stock to increase and they purchase put options when they expect the price of the underlying stock to decrease.

18. The options purchased by Compton were frequently "out-of-the-money," meaning that the price of Domino's stock would have to rise, in the case of a call option, or fall, in the case of a put option, in order for Compton to profit.

19. Compton purchased Domino's options in seven different brokerage accounts. Two of these accounts were held solely by Compton and another two were held jointly with a family member. Compton was neither a named account holder nor an authorized trader in the remaining three accounts, which were held solely in the name of another family member. While these accounts were not in his name, Compton accessed these accounts to buy and sell Domino's options.

20. Compton purchased Domino's options prior to each of the Earnings Announcements listed below after accessing material non-public information through his role as Program Leader. On the date of each Earnings Announcement, Domino's released its financial results for the period, making public the very same information that Compton possessed when making his trades. Following the Earnings Announcements, Compton sold his options for a profit. The following chart summarizes the impact of Domino's Earnings Announcements by quarter and Compton's resulting profits.

| Date of Earnings Announcement | End of Day Impact on DPZ Stock Price | Compton's Trading Profits |
|---|---|---|
| April 23, 2015 | 2.22% Increase | $12,550 |
| July 16, 2015 | 1.19% Decrease | $192 |
| October 8, 2015 | 0.06% Increase | $14,609 |
| February 25, 2016 | 4.73% Increase | $24,725 |
| April 28, 2016 | 0.46% Decrease | $42,650 |
| April 27, 2017 | 0.83% Decrease | $100,552 |
| October 12, 2017 | 0.54% Increase | $31,783 |
| April 26, 2018 | 0.42% Increase | $26,430 |
| October 16, 2018 | 1.95% Decrease | $99,732 |
| February 21, 2019 | 3.24% Decrease | $85,929 |

| February 20, 2020 | 9.97% Increase | $465,595 |
| July 16, 2020 | 0.9% Increase | $55,950 |
|  | **Total Trading Profits** | $960,697 |

### D.    Compton Acted with Scienter.

21.    At the time of his trading described above, Compton knew or was reckless in not knowing that the information regarding the Company's earnings results and financial performance that had been entrusted to him was material information that had not yet been disclosed to the public.

22.    At the time of the trading described above, Compton knew or was reckless in not knowing that he owed Domino's a fiduciary duty, or an obligation arising from a relationship of trust or confidence to keep confidential any material non-public information regarding the Company's quarterly and annual earnings results and financial performance, and to refrain from using this information to place trades.

23.    Compton knowingly or recklessly breached his duty to Domino's by trading in Domino's securities on the basis of that material non-public information.

## **CLAIM FOR RELIEF**

**Violations of Section 10(b) of the Exchange Act and Rule 10(b)5 Thereunder**

24. The SEC realleges and incorporates by reference paragraphs 1 through 23, as though fully set forth herein.

25. By engaging in the conduct described above, Compton in connection with the purchase or sale of securities, directly or indirectly, by the use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, with scienter:

   a. employed devices, schemes, or artifices to defraud;

   b. made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstance under which they were made, not misleading; and/or

   c. engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

26. By engaging in the foregoing conduct, Compton violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the SEC respectfully requests that this Court:

I.

Permanently restrain and enjoin Compton from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

II.

Order Compton to pay civil monetary penalties under Section 21A of the Exchange Act [15 U.S.C. § 78u-1];

III.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

IV.

Grant such other and further relief as this Court may deem just, equitable, and necessary.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the SEC demands trial by jury in this action of all issues so triable.

Dated: April 13, 2022.

Respectfully submitted,

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**

/s/ Gregory A. Kasper
Gregory A. Kasper, CO Bar No. 46800
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, Colorado  80294
(303) 844-1026
KasperG@sec.gov


Local Counsel for Plaintiff
DAWN N. ISON
United States Attorney

Susan K. DeClercq (P60545)
Assistant United States Attorney
U.S. Attorney's Office – Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-9149
(313) 226-3271 (facsimile)
susan.declercq@usdoj.gov
